IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| MICHAEL PATRICK KENNEDY | § | |
| | § | |
| v. | § | |
| | § | |
| DR. DAVID POTTER, | § | NO.7:07-CV-022-KA |
| JOHN WILSON AND | § | |
| THOMAS J. TURNER | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This *pro se* prisoner civil rights action was referred to the undersigned United States magistrate judge for the purpose of hearing and making recommendation on Plaintiff's Motion for Temporary Injunction. This is a civil rights action brought by Michael Patrick Kennedy, an inmate at the Allred Unit of the Texas Department of Corrections, located at Wichita Falls, Texas, against Senior Warden Eddie C. Williams, Medical Director Dr. David Potter, and Physician Assistant John Wilson, claiming that they had intentionally and deliberately denied him adequate medical care for the injuries he had sustained from two gunshot wounds sustained during his apprehension and arrest on March 3, 2005. Plaintiff filed his Motion for Temporary Injunction on October 15, 2007 seeking to compel the Allred Unit to refer him to a qualified neurosurgeon to remove bullet and bone fragments from his spine and a bullet from his pelvis.

A civil rights claim based on the denial of adequate medical care is governed by the "deliberate indifference" standard of the Eighth Amendment to the United States Constitution. *U.S. CONST.* amend. *VIII*; *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976). In order to establish a constitutional violation, the Plaintiff must show that prison officials acted with deliberate indifference to his medical needs such as to cause the "unnecessary or wanton

*RECOMMENDATION ON MOTION FOR TEMPORARY INJUNCTION - Page 1*

infliction of pain." Id., *97 S. Ct. at 292*. This, in turn, requires proof that Defendants were subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. *Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996), citing *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S. Ct. 1970, 1984, 128 L. Ed. 2d 811 (1994).[1]

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas,* 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson,* supra. *at 459*. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997); see also *Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir. 1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997).

Deliberate indifference under the Eighth Amendment requires the same showing of "subjective recklessness" used in criminal law. *Farmer v. Brennan,* 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Negligence, even gross negligence, or medical malpractice is not enough

---

[1] *Gaudette v. Wendt,* 2005 U. S. Dist. LEXIS 3584 p.3 (NDTX 2005).

to meet the test. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1993) (citing *Fielder v. Bosshard*, 590 F.2d 105, 107 [5th Cir.1979]). An incorrect diagnosis does not suffice. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985). Rather, the plaintiff must show the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id.

A disagreement between an inmate and his physician concerning whether certain medical care was appropriate is actionable under *§ 1983* only if there were exceptional circumstances. See *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. See *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir.1993).[2]

It is apparent that Plaintiff has and continues to receive medical care for his chronic back pain arising from the bullet and bone fragments from one of the gunshot wounds. There is not sufficient evidence of deliberate indifference on the part of these prison officials. The below recited record of sick calls, examinations and meetings between the medical staff and Plaintiff regarding his condition do not support his indifference claims. While the meetings and examinations may be fewer and shorter than in the outside world where security is not an issue, the lack of frequency does not establish indifference. There is no evidentiary support whatsoever for Plaintiff's retaliation allegations.

Plaintiff cannot maintain a civil rights claim merely because he disagrees with his course of treatment. Although Plaintiff wants a referral to an outside neurosurgeon and surgical treatment to alleviate the chronic pain associated with fragments, he has failed to show that the Prison Unit

---

[2] From *Sexton v. Young*, 2007 U. S. Dist. LEXIS 25147, pp. 3-4 (WDLA 2007)

*RECOMMENDATION ON MOTION FOR TEMPORARY INJUNCTION - Page 3*

medical staff was deliberately indifferent in refusing to authorize the referral and the surgical procedure. Rather, it is clear that the medical staff considered the relative risks of surgery to the prospects for ameliorating the pain and determined that the surgical procedure was not warranted. ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs"). *Graves v. Hampton,* 1 F.3d 315, 319 (5th Cir. 1993).

In order to be entitled to a temporary restraining order or a preliminary injunction, a litigant must demonstrate each of the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not have an adverse effect on the public interest. *Women's Med. Ctr. of Northwest Houston v. Bell,* 248 F.3d 411, 418-20 (5th Cir. 2001). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable harm." *Lewis v. S.S. Baune,* 534 F.2d 1115, 1121 (5th Cir.1976); *Sexton v. Young,* 2007 U. S. Dist. Lexis 25147 (WD La 2007, adopted 2007 U. S. Dist. Lexis 29462)[3]

## Findings of Fact

1. That Plaintiff was injured by seven (7) gunshot wounds inflicted by law enforcement offices at the time of his apprehension and arrest on March 3, 2005. Plaintiff arrived at the Allred Unit one year later.

2. Upon his apprehension and arrest, Plaintiff was promptly transported to Brook Army Medical Center (BAMC) for evaluation and treatment of his wounds.

3. At BAMC the medical personnel conducted x-ray examinations of the Plaintiff and

---

[3] *Sexton,* supra. at p. 5

his condition.

    A.    <u>Bullet No. 1 Report</u>:  The First Radiological Report (#05071559 of March 4) of such examination (PX10:1-2)[4] reflects that Plaintiff had a bullet ("Bullet 1") lodged in the muscles of his spinal area near the C5 vertebra. The body tissues (muscles and fat planes) near the spine were still intact and there was no evidence that the bullet had fractured, moved or dislocated the spinal elements.

    B.    <u>Bullet No 2 Report</u>.  The Second Radiological Report (#05071555 of March 4) of such examination (PX.10:3-5,) and the Third Radiological Report (#05073023) of March 5, the next day, (PX.10:20-21, each reflects that a second bullet ("Bullet 2") was lodged in Plaintiff's lower left pelvis area. That bullet had struck spinal elements and fractured on of the vertebral arms leaving small metal ("shrapnel") and bone fragments projecting into the canals through which left spinal nerves pass. The bullet body remains in the pelvic area and the fragments remain in the spinal nerve canal areas of Plaintiff's spine.

    C.    <u>Neurologist Report.</u>  While Plaintiff was still in state custody in June 2005, Plaintiff was evaluated by a private neurologist (Davis) who noted that Plaintiff "has neuropathic pain" which "sciatic nerve injury is probably related to the gunshot wound." (PX 11:3-4). He treated Plaintiff's pain with injections of steroids and Neuronic, a pain medicine. He saw Plaintiff again on June 26 and August 22 which noted improvement in pain management. The subsequent follow-up on August 22 noted "the fragment does not seem to be associated with the nerve roots or sciatic nerve at this time." (PX11:1)

    D.    <u>Other Bullet Wounds.</u>  While at BAMC, the medical personnel made further thorough examination of Plaintiff's other gunshot wounds and injuries (PX 9,10) from which he has now recovered.

    E.    <u>Other Medical Services.</u> While Plaintiff was still in state custody, beginning in October 2005 and continuing to March 31, 2006, Plaintiff was seen monthly by a physician at a pain management clinic on 10/4/05, 10/21/05, 11/18/05, 12/2/05, 2/3/06 and 3/31/06. They noted the bullet and fragments locations, Plaintiffs complaints of pain and on several occasions gave Plaintiff injections for the pain.(PX12)

---

[4] References to Exhibits shall be in the format "PX" and "DX" for the parties; "Number: Page(s)" for the Exhibit Number and Page Number(s), eg: (PX 1:3-6). Where exhibits are copied on both sides, *each* side is counted in reciting the exhibit page numbers.

4. <u>Medical Assistance Requests</u>. Promptly upon arriving at the Allred Unit, Plaintiff commenced his quest to be reexamined by the prison medical personnel to obtain corrective surgery for removal of the sand sized metal and bone fragments (the "shrapnel")[5] and amelioration of the debilitating pain he asserted he was experiencing. Using the written request system established by the prison unit, he repeatedly requested the examination, evaluation and treatment by prison and/or outside medical personnel for his injury and for his pain. Written requests were made by Plaintiff on April 7, May 6, 8,17,18 and 24, June 1, June 7 (by sister), 6/26, 7/2, 7/6, 7/7, 7/12, 9/4, 9/6, 9/19, 12/14, 12/19/06, 1/9/07, 1/14/07, 1/26/07, 8/06/07, 8/24/07, 9/15/07. (PX 1, 6,13,17, 19, 21, 24, 26, 27, 30). Plaintiff apparently received "lay-in" infirmary passes each time he requested for 6/21, 7/14, 9/10, 9/12, 9/16, 9/25, 12/17, 12/21, 1/19/07, 1/26/07,1/23/07, 8/6/07(PX19).

5. <u>Work Assignments</u>. Promptly following his arrival at the Allred Unit, Plaintiff was assigned to a work crew that worked in the prison's agricultural fields ("hoe crew"). Plaintiff promptly objected that the hoe crew activities exacerbated his pain from the shrapnel. Later, after one or more meetings with the prison medical personnel, Plaintiff was removed from the hoe crew and reassigned to the laundry room crew for which he complained that some of the laundry crew activities aggravated his pain. Even later, Plaintiff was assigned to a mess hall serving crew. Plaintiff makes complaint that in his current assignment certain of the activities assigned to or expected of him as a member of the mess crew exacerbate the pain he experiences from his injury.

6. Plaintiff's first examination was on May 26, 2006 when he was seen by a physicians

---

[5] Following a review of the BAMC X-rays, Dr. Potter characterized the size of the fragments as "grains of sand" about "less than 1 millimeter".(Tr. 130, 173). Plaintiff repeatedly characterized the fragments as "shrapnel."

assistant Wilson (hereafter PA Wilson) and a prison nurse Newman during a sick call exam. They ordered the taking of Pelvic and Lumber spine x-rays.(PX 18) ("Allred X-rays")

7. Plaintiff's second examination was on June 1 during a "Medical Lay-in." A medical assistant referred him to an outside provider which x-rayed plaintiff on June. (PX 3,4,5). The x-rays confirmed the existence and location of the bullet body and the fragments but noted no other spinal abnormalities.(PX 7-8)

8. Plaintiff's first meeting with the prison doctor (Dr. Potter) was on June 13, 2006 at a time when BAMC reports, the Neurological Reports and the recent x-ray reports were not yet available. Dr. Potter took and noted a brief patient history, awaited the recent x-rays suggested a 4 hour work restriction, indicated he would call for the Comal Jail Reports (that might include the BAMC reports), suggested he would see Plaintiff again during the next month's sick call.(PX 2, 13).

9. First Exam-PA Wilson. After receiving the Allred X-rays, on July 14, 2006 PA Wilson met with Plaintiff to review the x-ray reports but the discussion was terminated by PA Wilson due to Plaintiff's behavior in saying "You are going to take them (fragments) out or do I have to sue this place and you to get what I want."(PX 20 and 31:25-27) (Tr.). This statement caused PA Wilson to characterize Plaintiff's behavior as "interruptive."(PX 20). Plaintiff's description of this exchange is at distinct variance to Wilson's description.

10. Plaintiff's Formal Grievances and Examinations at Allred. Plaintiff's Exhibit 31 containing a jumble of grievance materials contains records of numerous grievances Plaintiff lodged with the prison authorities regarding his encounters with the medical services administration, Dr.

Potter and PA Wilson.[6] Even with the testimony of Plaintiff and the Defendants it is difficult to follow the order of the grievances, their procedural steps and the decisions made there to. Also the reports of examinations of Plaintiff by prison medical personnel are scattered among Plaintiff's various exhibits. However, from the Exhibits and testimony I have gleaned and find as follows:

> A. First Grievance. On 8/9/06 Plaintiff initiated his first formal grievance under the prison grievance system(PX-31:23-27) against PA Wilson, Dr. Potter and Dr. Gardner (the Facility Medical Administrator) claiming Constitutional denial of adequate medical care since they had not referred him to a "qualified orthopedic surgeon for hole in pelvis bone" and "a qualified neurosurgeon for bullet fragment removal off my spine." This grievance was denied by the Senior Warden 8/29/06 based in part on PA Wilson's report of Plaintiff's "interruptive and aggressive behavior" during the July 14 meeting with Plaintiff and on the lack of intervening complaints by Plaintiff, deferring to medical decisions to the medical staff but suggesting that Plaintiff could thereafter seek re-examination by the medical staff.(PX 31:25). The record is unclear whether Plaintiff pursued this grievance to Step 2.
>
> B. Next Examination. On September 13, 2006, Pinkston performed a PULHES examination and report as to Plaintiff's condition. Her PULHES report concluded that Plaintiff had no conditions warranting restrictions on his activities including <u>no work restrictions</u>.(PX22)
>
> C. Next Examination. On September 16, 2006,Plaintiff was examined by LVN Austin for back pain. She noted his prior forms of pain medicines and proscribed Ibuprofen 200 mg for 3 days to ameliorate plaintiff's pain.(PX 23)
>
> D. Another Grievance. On 9/16/06, Plaintiff initiated another grievance #200622470 apparently appealing the Warden's decision in grievance #2006214503 pressing this grievance to Stage 2 of the grievance procedure replying that the fault was with PA Wilson. Plaintiff disputed PA Wilson's and Dr. Potter's characterizations of his conduct as being a "threat." Instead Plaintiff replied that his actions were the natural result of a "failed grievance process." He further asserted that he had followed up with requests for new

---

[6] Plaintiff's Exhibit 31 contains references to 7 grievance numbers: 2006214503, 2006222470, 2008008644, 2008029066, 2007081034, 2007203860, and 2007075949. Some pages relate to Step 1 and some to Step 2 in the grievance procedure. During the testimony stage, neither party attempted to reconcile the grievances and the rulings.

examinations by the medical staff on 9/1, 9/6 and 9/10, received a medical lay-in on 9-10 that was cancelled and one on 9/16 when no doctor was present. This stage two was also denied on October 27 with the terse statement "Step 1 has addressed your complaint. No further action is warranted." (PX 31;26-27).

E. <u>Next Examination.</u> On September 25, 2006 Plaintiff was seen during a sick call by LBP Huff who advised Plaintiff that removal of the fragments was not an option and recommended NSAIDS for pain management.(PX 25)

F. <u>Next Examination.</u> On December 19, 2006 Plaintiff was seen by LVN Tardiff for back pain and again was proscribed Ibuprofen.(PX 27)

G. <u>Another Grievance</u>. On or about January 1, 2007 Plaintiff initiated grievance Number 2007075949, complaining that he had been denied treatment by PA Wilson during a 12/21/06 examination, that PA Wilson had denied him access to Dr. Potter or any outside provider of medical services and "gouged him with his finger nail to "feel the fragment" and ordered him out. (PX 31:1-4). PA Wilson reported that during the 12/21/06 examination he attempted to palpate the area of the plaintiff's pain complaints but denied he had gouged Plaintiff with his finger nail or his thumb (PX27:3) and testified to the incident saying "he screamed and jumped and said "get your hands off of me."(Tr.220) Plaintiff's grievance at Step 1 was denied by the Senior Warden on the grounds articulated by PA Wilson of the 12/21/06 events. Plaintiff pressed the grievance to Step 2 further complaining that PA Wilson tried to intimidate him by "Wilson digs his thumbnail into my spinal wound and tells me to get out and stop coming back." On 2/22/07 the Step 2 appeal was denied reciting PA Wilson's report of the events of 12/21/07 and relying on another occasion on 1/23/07 when Plaintiff allegedly refused or resisted examination by PA Wilson.(PX 31:1-4)

H. <u>Another Examination.</u> On 1/17/07, Plaintiff was seen by an LAN at the facility who proscribed Ibuprofen for the pain.(PX 27;6-7)

I.. <u>Another Grievance.</u> On or about 1/17/07, Plaintiff initiated grievance #2007081034 relating to sores on his back, unrelated to the bullet fragments.

J. <u>Next Examination.</u> On January 23, 2007, Plaintiff was seen during sick call by Nurse Combs who noted that Plaintiff jumped back from her attempted palpation of his mid and lower back and stated "don't touch me." Meeting with this resistance from Plaintiff, Combs ordered him out of the exam room. (PX27:8)

K.  Federal Complaint. On January 31, 2007 Plaintiff filed his complaint in this civil action complaining of the unconstitutional denial of adequate medical care by the Allred Prison, its medical treatment administration and Dr. Potter and PA Wilson.(Docket No. 1) But that did not end the grievances pursued by Plaintiff.

L.  Another grievance. On or about July 7, 2007 Plaintiff filed a Step 1 grievance No. Unknown against Ms. Case of the Medical Records Department for failing or refusing to furnish to him copies of his medical records. That grievance expired without results. (PX31:11-12). Not content with the lack of response to this grievance, on October 10, 2007 Plaintiff initiated grievance No. 2008029066 complaining of the lack of response to his records grievance and adding that Pinkston had falsified an entry on Plaintiff's medical record to the effect that he was then "without pain." This alleged false entry Plaintiff ascribed to Pinkston's "conspiratorial maneuver to aid and support" other medical personnel in their oppression of Plaintiff. This grievance was denied at Step 1 on October 30, 2007 on the basis of lack of evidentiary support.(PX31:12). On November 13, 2007 Plaintiff pressed this grievance to Step 2 urging that Pinkston was conspiring with RN Williams, PA Wilson and Dr. Potter, Administrator Haynes and others to prevent his presentation of his complaints to the Court and implicating Kitchen Sergeant Finches in the conspiracy to act in retaliation to Plaintiff's filing in this court and to prevent the Plaintiff from receiving the outside medical treatment he had been insisting upon.(PX31:9-10) 4. Throughout the term of his residence at the Allred Unit, Plaintiff has experienced chronic back pain in varying intensities from various activities (including rest) and resulting from small fragments of bone and metal from a bullet that struck him during his arrest and apprehension.

11. Plaintiff's chronic back pain has not be significantly ameliorated or managed by NSAIDs or Ibuprofen.

12. There is no proof that the fragments currently located in Plaintiff's spinal area are causing or will cause further damage to other areas of Plaintiff's body or Plaintiff's health condition apart from the chronic pain he experiences. Further injury is speculative at best. Further injury is not imminent.

13. Although one medical practitioner did suggest surgical intervention, there is not sufficient medical proof that surgical intervention to remove the fragments of bone and metal will

end or sufficiently ameliorate Plaintiff's chronic back pain.

14. Plaintiff does not experience significant pain from the bullet lodged in his pelvic region (Bullet 1) and removal of that bullet is not medically needed or recommended by any medical practitioner who has examined Plaintiff.

15. Plaintiff's chronic back pain may be exacerbated by certain lifting and bending activities mandated by certain of the work assignments to which he has been assigned such as the hoe crew and the laundry crew.

16. Plaintiff failed to prove that his current assignment to the mess crew necessarily requires him to engage in activities that exacerbate his chronic back pain.

17. Plaintiff has wholly failed to prove that any of the medical personnel intentionally denied work restrictions to Plaintiff to cause him pain or in retaliation for his pursuing grievances or the assertion of his constitutional rights in this lawsuit.

18. Plaintiff has failed to prove by a preponderance of the evidence (much less clear and convincing evidence) that any of the prison medical personnel (Dr. Potter, Dr. Gardner, PA Wilson, Nurses Newman, Pinkston or Combs or the Warden Williams) intentionally refused Plaintiff medical care or treatment to which or for which he was in reasonable medical probability entitled or for which treatment was medically recommended.

19. Surgery to remove the small (sand sized) fragments of bone and metal from Plaintiff's spinal region to ameliorate or terminate Plaintiff's pain is not medically mandated.

## Conclusions of Law

1. Plaintiff has exhausted his state remedies for the complaints.

2. Surgery to remove the small (sand sized) fragments of bone and metal from Plaintiff's spinal

region to ameliorate or terminate Plaintiff's pain is not legally mandated.

3. Plaintiff has not shown that he will suffer irreparable harm if surgery is not performed to remove the fragments.

4. Plaintiff's current work assignment to the mess crew is not unreasonable and does not and will not cause him irreparable injury.

5. There is not a substantial threat that Plaintiff will suffer irreparable harm if the injunction is not granted.

6. Plaintiff has failed to demonstrate that this Court should interfere with the medical care administration of the Allred Unit of the Texas Department of Corrections. In the absence of such proof, such interference would adversely affect the public interest.

7. Plaintiff is unlikely to prevail in this case upon its merits.

8. Plaintiff is not entitled to a temporary injunction.

## RECOMMENDATION

I recommend to the District Court that Plaintiff's Motion for Temporary Injunction be denied.

Recommended this 26th day of March, 2008.

_____
ROBERT K. ROACH
UNITED STATES MAGISTRATE JUDGE

## NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.