IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

MICHAEL PATRICK KENNEDY,        )
TDCJ #1358289,                  )
                Plaintiff,      )
                                )        Civil No. 7:07-CV-022-O
v.                              )
                                )
DR. DAVID POTTER, *et al.*,     )
                Defendants.     )

MEMORANDUM OPINION AND ORDER

Came on this day to be considered Defendants' Motion for Summary Judgment (Doc. No.

59) and Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment (Doc. No.

74) and the Court finds and orders as follows:

This is an action brought pursuant to 42 U.S.C. § 1983 by an inmate confined in the James

V. Allred Unit of the Texas Department of Criminal Justice in Iowa Park, Texas.  Defendants are

the warden, a physician and a physician's assistant at the Allred Unit.  Complaint ¶ IV.B.

Plaintiff claims that he has been denied medical care for pain caused by bullet fragments

lodged in his spine and a bullet lodged in his pelvis.  Complaint ¶¶ V & VI.  He asks the Court to

order extraction of the bullet and fragments by a qualified neurosurgeon.  *Id.* at ¶ VI.

In order to state a colorable claim for the denial of medical care under the Eighth

Amendment, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate

indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "Deliberate

indifference" under the Eighth Amendment occurs only where a prison official subjectively knows

of and disregards a substantial risk to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S.

825, 837 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). However, it is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). A disagreement over the appropriate medical treatment constitutes, at most, a possible claim of medical malpractice appropriately addressed under state law. *E.g., Estelle v. Gamble*, 429 U.S. at 107-08; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Defendants concede that Plaintiff suffered gunshot wounds to his back and pelvic regions prior to his incarceration. Brief in Support of Defendants' Motion for Summary Judgment at pp. 3-4 (hereinafter "Defendants' Brief at p.___."). However, they argue, *inter alia*, that they have not been deliberately indifferent to Plaintiff's need for care and that they are entitled to qualified immunity from suit. Defendants' Brief at p. 2.

A review of the summary judgment evidence submitted by Defendants reflects that Plaintiff was seen by medical care providers at the Allred Unit on numerous occasions. Appendix to Brief in Support of Defendants' Motion for Summary Judgment, Exhibit 3, pp. 6-58, (hereinafter "Defendants' Appendix, Exhibit ___ p. ___ ."). The Court has reviewed Plaintiff's medical records and the other evidence submitted to the Court. A summary of Plaintiff's medical records and other pertinent evidence for the time period relevant to the issues in this lawsuit is aptly set forth by Defendants as follows:

Prior to coming to Allred, Kennedy was held in transit at TDCJ's Byrd Unit in Huntsville, Texas, where he was first seen by a physician's assistant and registered nurse on April 6, 2006, and given a physical exam by Dr. Hung Dao on April 11, 2006. Ex. 3 at 7, 9-10. During his visit with the physician's assistant and nurse, on April 6, 2006, it was noted that he had a "history of nerve damage to his left foot and leg," and he was prescribed Naproxen, a common pain medication. Ex. 3 at 7. Presumably, the "history of nerve damage to his left foot and leg" information was reported by Plaintiff, and was not a diagnosis by the physician's assistant or registered nurse, or even based on Plaintiff's prior medical records as his medical records had not been received from the Comal County Jail by then. Ex. 3 at 6.

During Plaintiff's physical examination on April 11, 2006, Dr. Dao noted that Kennedy had a history of a gunshot wound to his neck and back, but "no neurologic deficit in extremities." Ex. 3 at 9. Further, Dr. Dao noted that Plaintiff was asking for a cane, but could "get up from chair without any pain." Ex. 3 at 9. Based on his physical assessment of Plaintiff, Dr. Dao denied his request for a cane, and did not give him any restrictions. Ex. 3 at 10. On April 11, 2006, a Health Summary for Classification form or HSM-18 was created for Plaintiff Kennedy, and reviewed by Dr. Dao, it clearly states that he had no restrictions in unit, housing, or work assignment in place. Ex. 3 at 8.

Kennedy was transferred to the Allred Unit on or before May 2nd, 2006. App. at 5. An I-60 form is used by inmates to communicate with departments, including medical, to report any problems that they have or assistance that they need. Ex. 8. Kennedy filed his first I-60 form with the medical department on May 4th, 2006. Ex. 3 at 12. In the I-60, Kennedy requested to see a doctor about lower back pain associated with his gunshot wound and stated, "my county jail neurosurgeon recommended having the bullet removed - so did the neurologist." *Id.* Four days later, on May 8th, 2006, Kennedy filed another I-60 in which he complained of pain and stated, "Please cut my skin, muscle, and pull out the bullet. My Comal County medical records show my neurosurgeon and neurologist recommend removal of the bullet." Ex. 3 at 13.

Kennedy was seen on May 8th, 2006, by Licensed Vocational Nurse Phyllis Tigert. Ex. 3 at 14-16. She conducted a Nursing Protocol for Musculoskeletal Symptoms on Plaintiff, and noted that Plaintiff complained of leg and foot pain from a history of gunshot wounds. Ex. 3 at 14. LVN Tigert then scheduled Plaintiff for further evaluation by a higher level practitioner. Ex. 3 at 15. On May 16th, 2006, Plaintiff was again seen in the clinic, he complained of pain and stated that he felt the bullet had shifted. Ex. 3 at 17. He was told that a referral had been made to the physician or mid-level practitioner for further evaluation. *Id.* On May 14, 2006, Plaintiff filed an I-60 stating, "until the bullet is removed from my spine I must lay down to releave (sic) the pressure and pain." Ex. 3 at 19. On May 18, 2006, Plaintiff filed a Sick Call Request. Ex. 3 at 18. He stated that the reason he needed an appointment was for a "spinal injury from bullet, cannot bend lift; request Dr. to remove bullet, take me off the Garden Squad." *Id.* Kennedy filed two I-60s on May 24th, 2006; one identical to the I-60 filed on May 18th, 2006, and the other requesting immediate removal from the garden crew. Ex. 3 at 20, 21. Kennedy was notified on both the May 14th and May

18th and the two May 24th I-60s that his appointment with a mid-level provider had been scheduled and that he should await his lay-in. Ex. 3 at 18-21.

On May 26, 2006, Kennedy was seen by Physician's Assistant Defendant Wilson, a mid-level provider. Ex. 3 at 22. Plaintiff complained that it hurt to work on the hoe squad, problems with bending and standing up, and loss of feeling in part of his scrotum and penis. *Id.* In response to Plaintiff's complaints, Defendant Wilson ordered x-rays be taken of the lumbar spine and pelvis to enable further evaluation. *Id.* During this examination, Defendant Wilson had not received Plaintiff's "free-world" medical records (Defendant Potter requested that they be ordered when he evaluated Plaintiff on June 13, 2006), thus Defendant Wilson conducted an independent examination. Ex. 3 at 22, 26. Five x-ray views of Plaintiff's pelvis and lumbar spine were taken on June 1, 2006. Ex. 3 at 24.

Defendant Potter saw Kennedy on June 13, 2006. Ex. 3 at 26. Potter noted Plaintiff's complaints, and that he had yet to receive the report from the x-rays taken on June 1, 2006. *Id.* Potter also ordered two more x-rays, of the chest, be done, and that Kennedy should be placed on a 4-hour work restriction for the following 180 days. *Id.* Dr. Potter testified that because he did not have the x-ray report or Kennedy's medical records from the Comal County Jail, but only the records from the previous units Kennedy was assigned to during his transit to Allred, at the time of his examination of Kennedy, he gave Kennedy the "benefit of the doubt" and ordered that he be given a half-day work restriction until he received and had an opportunity to review the records or the xray reports. Ex. 4 at 66, Exam - Potter, lines 21-25; 67, Exam - Potter, lines1-22. Presumably, Potter changed his mind about the need for 180 days to receive the records, and thus, forwarded a new HSM-18 form to the Allred Classification Department indicating that Kennedy should be put on a four hour work restriction for 90-days only; nonetheless, Kennedy was given a work restriction. Ex. 3 at 27.

Potter reviewed the radiology reports of the x-ray views on June 16, 2006; the reports stated that there is "no pelvic fracture or significant arthritic change" and "[l]umbar spine shows minimal endplate irregularity to the discs of T12-L1, L1-2, L3-4, and L4-5. No fracture, dislocation, or subluxation is seen." Ex. 3 at 29. Potter testified at the preliminary injunction hearing that the x-rays indicated that the fragments in his back were like "grains of sand", and not "as big as a piece of shrapnel" and "there was no significant foreign body present pushing on any nerves." Ex. 4 at 68, lines15-23. The two x-ray views that Potter ordered during his June 13, 2006, examination were taken on June 21, 2006. Ex. 3 at 30.

Kennedy filed his next I-60 on July 6, 2006, stating, "I am in pain. remover (sic) the bullet from my spine," and also commanding the medical staff to look at his x-rays and medical file from County. Ex. 3 at 31. He was scheduled for a nurse sick call. *Id.* The next day, July 7, 2006, Kennedy filed another I-60, stating, "I need the bullet taken out of my back." Ex. 3 at 32. Also, he, again, commanded the medical staff to look at his x-rays, and this time, made a reference to §1983. *Id.* Kennedy was, again, notified that he had an appointment pending, and to wait for his lay-in. *Id.*

-4-

On July 10, 2006, Potter reviewed the radiology report for the second set of x-rays, that were taken on June 21 , 2006; it stated that the "[c]hest is within normal limits." Ex. 3 at 33. Kennedy filed another I-60 on July 12, 2006, noting his pain, and requesting that he be provided with "meaningful pain medication" and to "schedule to pull the bullet from my spine." Ex. 3 at 34. Kennedy was told that he had an appointment pending and to wait for his lay-in. *Id.* On July 13, 2006, Kennedy was seen by a nurse; the nurse noted she was referring him to a mid-level provider to discuss x-ray results and treatment options. Ex. 3 at 35. Kennedy was seen the next day, July 14, 2006, by Defendant Wilson. Ex. 3 at 36. Wilson noted that as he was attempting to go over the results of the x-ray reports with Plaintiff, Kennedy interrupted him and said, "You are not going to take them (referring to fragments in his back) out. Do I have to sue this place and you to get what I want. You will take them out." *Id.* Wilson also noted that he tried to reason with Kennedy to no avail, and eventually had to ask Kennedy to leave the exam room. *Id.*

Kennedy did not file any I-60s or make any sick call requests for the entire month of August 2006.

On September 6, 2006, Kennedy filed an I-60 noting his pain, and stating, "I still have bullets and a fragment which needs to be pulled out of my spine." Ex. 3 at 37. Further, he asked if he was going to be sent for treatment. *Id.* Kennedy was scheduled for an appointment. *Id.* On September 13, 2006, the 90-day work restriction put in place on June 13, 2006, by Defendant Dr. Potter expired and a new HSM-18 was issued by a nurse practitioner, Sandra Pinkston, that indicated that Kennedy had no restrictions in place. Ex. 3 at 38. On September 16, 2006, a Nursing Assessment Protocol for Musculoskeletal Symptoms was conducted on Kennedy by a licensed vocational nurse; his lower back pain was noted and he was prescribed ibuprofen. Ex. 3 at 39-40. Kennedy filed an I-60 on September 19, 2006, requesting to see Dr. Potter about the pain in his back. Ex. 3 at 41. He was informed that he was scheduled to see the doctor. *Id.* Kennedy was seen by Defendant Wilson on September 25, 2006. Ex. 3 at 42. Wilson noted that the x-rays confirmed that there were metallic fragments in Kennedy's back, but they were not compromising any vital organs. *Id.* Further, Wilson noted that he advised Kennedy that "surgery to remove these fragments was not an option. It would do more damage than good." *Id.* Wilson offered to prescribe anti-inflammatory pain medication to Kennedy, but Kennedy refused. *Id.*

There is no evidence in Kennedy's medical file that he made any requests for medical services for more than two months, from September 26, 2006 to December 13, 2006.

On December 14, 2006, Kennedy filed a sick call request stating pain from his bullet fragments as the reason he needed an appointment. Ex. 3 at 43. He was scheduled for a medical appointment. *Id.* Kennedy was given another Nursing Assessment Protocol for Musculoskeletal Symptoms on December 19, 2006, by a licensed vocational nurse. Ex. 3 at 44-45. The nurse referred him to a mid-level provider to treat his back pain, and prescribed him ibuprofen for the pain. *Id.* Kennedy saw Defendant Wilson on December 21, 2006. Ex. 3 at 46. During that appointment, Wilson attempted to examine the area of complaint, but

as Wilson noted, Kennedy would not allow him to touch the area of pain (his back), and thus Kennedy was told to leave since he refused to be examined. *Id.*

Kennedy filed a sick call request on January 9, 2007, and was told he was already scheduled for an appointment. Ex. 3 at 47. Kennedy filed another sick call request on January 14, 2007, and was again scheduled. Ex. 3 at 48. Kennedy was given another Nursing Assessment Protocol for Musculoskeletal Symptoms on January 17, 2007, by a licensed vocational nurse. Ex. 3 at 49-50. The nurse referred him to a mid-level provider for "eval(uation) of possible removal of bullet fragments in back and hip", and prescribed him ibuprofen. *Id.* On January 19, 2007, Kennedy did not show up for his scheduled clinic visit to evaluate the possible removal of the fragments. Ex. 3 at 51.

Kennedy saw Defendant Wilson at his rescheduled appointment on January 23, 2007, to evaluate whether removal of the fragments was a possibility. Ex. 3 at 52. As Wilson was attempting to examine Kennedy's lower back, Wilson noted that Kennedy jumped and told him not to touch him. *Id.* Wilson noted that he attempted to examine Kennedy more delicately, but Kennedy resisted the examination. *Id.* Kennedy was eventually asked to leave the exam room because he refused to be examined. *Id.*

*Defendants' Brief at pp. 14-20.*

The medical records clearly show that Plaintiff was seen, evaluated, and treated multiple times for the pain caused by the bullet and fragments in his back. The summary judgment evidence indicates that Plaintiff was not denied medical care, rather, he disagrees with the nature of the care provided. A disagreement over the nature of medical care provided does not rise to the level of a constitutional violation. To the extent, if any, that Plaintiff states a claim for medical negligence, he cannot prevail in this lawsuit. Allegations of negligence do not present a cognizable basis for relief under the Civil Rights Act. *See Daniels v. Williams*, 474 U.S. 327 (1986) (holding that negligence is not actionable under § 1983); *Davidson v. Cannon*, 474 U.S. 344 (1986) (same). Plaintiff has presented no evidence which could demonstrate that the actions of Defendants violated his constitutional right to medical care. The Court further finds that the medical care provided by

Defendants' was objectively reasonable under the circumstances. As such, Defendants are entitled to qualified immunity from suit.

To the extent, if any, that Plaintiff presents a claim of medical negligence, such a claim could be addressed under state substantive law. Therefore, the next issue in this case is whether this Court has jurisdiction to entertain Plaintiff's claims under Texas state law.

"[S]ubject-matter jurisdiction is not waivable, and the federal courts are under a continuing duty to inquire into the basis of jurisdiction in the district court." *Warren v. U.S.*, 874 F.2d 280, 281-82 (5th Cir. 1989) (citing *Smith v. Booth*, 823 F.2d 94, 96 (5th Cir. 1987)). "[T]he District Court is vested with authority to inquire at any time whether the [ ] conditions [to the exercise of its jurisdiction] have been met." *Broussard v. U.S.*, 989 F.2d 171, 176 (5th Cir. 1993) (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). When a complaint presents no federal question, 28 U.S.C. § 1332 requires complete diversity of citizenship and $75,000 in controversy to invoke the jurisdiction of a federal court. From the face of Plaintiff's complaint, it is apparent that he and Defendants are all citizens of Texas. *Complaint ¶ IV.* Because there is no diversity of citizenship, Plaintiff's medical care complaint, construed as a diversity action, must be dismissed for lack of jurisdiction.

Summary judgment is proper when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th

Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law provides that an issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248; *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir. 1988).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Celotex*, 477 U.S. at 322-24; *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden," *Douglass*, 79 F.3d at 1429, as "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado*

*v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  In the absence of any proof, however, the court does not assume that the nonmovant could or would prove the necessary facts.  *Id.*

In making its determination on the motion, the court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988).  However, "the [court's] function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  The movant's motion for summary judgment will be granted if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact.  Fed. R. Civ. P. 56(e)(2).

The summary judgment evidence presented in the instant case establishes that there are no genuine issues of material fact and that Defendants are entitled to summary judgment as a matter of law.

For the foregoing reasons, it is ORDERED that *Defendants' Motion for Summary Judgment* is GRANTED and Plaintiff's federal claims are dismissed with prejudice.

It is further ORDERED that Plaintiff's complaint, liberally construed as a diversity action raising state law claims, is dismissed without prejudice pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, for lack of jurisdiction.

The Clerk of Court shall transmit copies of this order to Plaintiff and to Counsel for Defendants.

SO ORDERED this 31st day of March, 2010.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**